IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                                                                  Criminal Action No. 3:20cr30

MARK HAROLD LOEWEN,
         Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Mark Harold Loewen's motion for compassionate release under 18 U.S.C. 3582(c)(1)(A).[1] (ECF Nos. 39, 51.) Loewen requests compassionate release because of his "debilitating" ulcerative colitis and the ongoing risk posed by the COVID-19 pandemic. (*See* ECF No. 40, at 11, 13.) Loewen asks the Court to order his immediate release or, in the alternative, allow him to serve the remainder of his sentence on home confinement. (ECF Nos. 40, at 11; 51, at 11.) The government opposes his motion. (ECF No. 47.) Because Loewen does not establish an extraordinary and compelling reason warranting relief and the § 3553(a) factors do not support his release, the Court will deny his motion.

## I. BACKGROUND

Between 2013 and 2018, Loewen and Henry Alexander McLarty, Sr., conned numerous victims into "investing" their money through a carbon offset investment firm called "World

---

[1] Loewen initially sought compassionate release based, in part, on the conditions of his confinement at United States Penitentiary Atlanta. (*See* ECF No. 40, at 10, 15–16.) The government opposed that motion. (ECF No. 47.) Loewen then sought an extension of time to reply to the government, which the Court granted. (*See* ECF Nos. 48, 49.) As his reply was pending, the Federal Bureau of Prisons ("BOP") transferred Loewen to Federal Prison Camp Montgomery ("FPC Montgomery") in Alabama. Loewen subsequently replied to the government's response. (ECF No. 50.) Loewen then filed a supplement to his motion for compassionate release, asserting that "new information regarding [his] underlying health conditions have arisen." (ECF No. 51.) In reaching its decision, the Court has considered the arguments in both Loewen's original motion and his supplemental filing.

Wide Carbon, LLC." (ECF No. 45, at 4.) Investors turned over hundreds of thousands of dollars each after Loewen promised return rates from five to twenty percent. (*See* ECF No. 45, at 5, 7–8.) Rather than use that money to purchase carbon offset credits, Loewen "spent almost all of the . . . investor funds on purposes other than buying carbon offset credits" and "personally received over $310,000 of investor funds." (*Id.* at 4–5.) On March 3, 2020, a grand jury returned a five-count criminal indictment charging Loewen with conspiracy to commit wire fraud (Count One), wire fraud (Counts Two through Four), and unlawful monetary transaction (Count Five). (ECF No. 3.) On December 1, 2020, Loewen pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. (ECF No. 22.) In exchange for his plea, the government moved to dismiss the remaining counts against him. (*Id.* at 4; *see* ECF No. 34, at 1.)

Prior to sentencing, the Court calculated Loewen's total offense level as twenty. (*See* ECF No. 45, at 9.) This reflected both a three-point downward adjustment for acceptance of responsibility and a sixteen-point upward adjustment because Loewen's crimes involved a loss amount exceeding $1.5 million dollars. (*Id.*) On April 6, 2021, the Court sentenced Loewen to thirty-six months' imprisonment—below the median of his guidelines range—and three years of supervised release.[2] (ECF No. 37, at 2, 3.) At sentencing, the Court made a non-binding recommendation that the BOP place Loewen in "a facility with a strong medical program." (*Id.* at 2.) Loewen's BOP incarceration began on May 21, 2021.[3] (*Id.*) He is currently housed at FPC Montgomery, a minimum-security federal prison camp in Montgomery, Alabama. *Find an Inmate*, BOP, https://www.bop.gov/inmateloc/ (select "Find By Number"; then select "BOP

---

[2] The Court notes that it sentenced Loewen during the COVID-19 pandemic.

[3] Following sentencing, the Court ordered Loewen to self-report to the BOP by May 21, 2021. (*Id.* at 2.)

2

Register Number"; then search for "05734-509") (last visited September 26, 2022). To date, he has served approximately sixteen months of his sentence, and his projected release date is August 11, 2023. *Id.*

Loewen suffers from several medical conditions including ulcerative colitis. He attests to "increasing discomfort" from his ulcerative colitis and argues that both a lack of adequate treatment from the BOP and his susceptibility to contracting COVID-19 while incarcerated constitute an extraordinary and compelling reason for his release. (ECF Nos. 40, at 10; 50, at 3.) As explained below, the Court finds that neither Loewen's health conditions nor the ongoing pandemic presents an extraordinary and compelling reason for relief and that, even if they did, the § 3553(a) factors do not support his release. Accordingly, the Court will deny his request for release.

## II. LEGAL STANDARD

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C § 3582(c). Pursuant to § 3582(c)(1)(A), however, a district court may reduce a criminal defendant's sentence if "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, it finds that . . . extraordinary and compelling reasons warrant such a reduction."[4] *Id.* § 3582(c)(1)(A)-(i). "[P]rior to the First Step Act, courts could consider compassionate release only upon motion by the BOP." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). But today, § 3582(c)(1)(A) empowers a defendant to file his own motion for compassionate release so long as he first "fully exhaust[s] all administrative

---

[4] Alternatively, a district court may modify a defendant's sentence provided that "the defendant is at least [seventy] years of age, has served at least [thirty] years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community." *Id.* § 3582(c)(1)(A)(ii). None of these circumstances apply to Loewen.

3

rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or waits thirty days "from the receipt of such a request by the warden of [his] facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Although Congress did not define extraordinary and compelling reasons in § 3582(c)(1)(A), "the Sentencing Commission . . . addressed the issue in a policy statement, United States Sentencing Guideline § 1B1.13." *McCoy*, 981 F.3d at 276. Section 1B1.13 provided the BOP with several categories of "extraordinary and compelling reasons," to consider. *Id.* Following the passage of the First Step Act, however, the Sentencing Commission failed to update § 1B1.13 to account for motions filed by defendants. *Id.* at 281–82. Accordingly, the policy does not bind courts presented with a defendant's motion for compassionate release. *Id.* at 284. A court is thus "empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)) (alteration and emphasis in original). Nevertheless, compassionate release remains "an extraordinary and rare event," and a defendant seeking compassionate release must demonstrate that the totality of his circumstances warrants such relief. *United States v. Lottier*, No. 7:16cr30, 2022 WL 1522220, at *2 (W.D. Va. May 13, 2022) (citation omitted).

During the COVID-19 pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020).[5]

---

[5] *See also United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) ("The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the

4

## III. DISCUSSION

Loewen has exhausted his administrative remedies. As explained below, the Court finds that Loewen fails to establish an extraordinary reason for the Court to modify his sentence. Further, even if that did not bar the Court from granting him compassionate release, the § 3553(a) factors do not support a sentence modification in this case. Thus, the Court will deny Loewen's motion.

### A. *Administrative Exhaustion*

Prior to seeking compassionate release on his own behalf, a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or [wait thirty] days from the receipt of such a request by the warden of [his] facility, whichever is earlier." 18 U.S.C. 3582(c)(1)(A); *see also Feiling*, 453 F. Supp. 3d at 837. The government freely concedes that Loewen "properly exhausted his administrative remedies by filing a request for home confinement . . . on or about June 21, 2021," and waiting thirty days before filing his motion for compassionate release with this Court. (ECF No. 47, at 6–7 n.1.) The Court thus proceeds to the merits of Loewen's motion. *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021) (concluding that the exhaustion requirement is "non-jurisdictional, and thus waived if it is not timely raised" by the government).

### B. *Analysis*

#### 1. *Extraordinary and Compelling Reasons*

Loewen was first diagnosed with ulcerative colitis in 2017,[6] several years before his

---

prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19.").

[6] "Ulcerative colitis is an inflammatory bowel disease that affects the lining of the large intestine and rectum." (ECF No. 40, at 11.)

conviction. (*See* ECF No. 45, at 13.) He now asserts that his condition is "rapidly worsening" and causing him "severe abdominal pain and daily bleeding from the colon." (ECF No. 40, at 10–11.) He laments that the BOP has only screened him to confirm the presence of ulcerative colitis and is not treating the disease itself. (ECF No. 50, at 2.) Loewen also argues that his medical conditions, including elevated blood pressure and prediabetes, may increase his potential for severe illness should he contract COVID-19. (ECF No. 40, at 12.) Further, he argues that his incarceration at FPC Montgomery poses a particularized risk to his health and contends that "any percentage [of positive cases within the facility] poses a risk of suffering serious injury or complications if he contracts COVID-19." (ECF No. 50, at 3.) Loewen received both doses of the Pfizer-BioNTech COVID-19 vaccine in April and May of 2021. (ECF No. 40, at 7.) Loewen argues that his vaccination status should not undermine his request for relief because "it is unknown how long immunity from the vaccine will last" and any vaccine "immunity *could* decrease over time." (*Id.* (emphasis added).) Finally, he says that BOP data does not accurately capture the prevalence of COVID-19 in prisons. (*Id.* at 15–16.)

The government argues that Loewen's ulcerative colitis is being managed by BOP care and contends that Loewen has failed to demonstrate that he is particularly susceptible to contracting a serious or fatal case of COVID-19 despite his vaccinations. (*See* ECF No. 47, at 10–11.) The Court agrees.

The government correctly notes that Loewen's medical records reveal that Loewen has received ongoing assessment, monitoring, and some treatment related to his ulcerative colitis. (*See* ECF No. 43-1.) In comparison, Loewen was apparently not receiving *any* monitoring or treatment prior to his incarceration. (*Id.* at 8 (explaining the Loewen reported self-managing his symptoms using coffee, cigarettes, and over the counter laxatives due to lack of medical

insurance and noting that Loewen never had a colonoscopy before his incarceration).) Indeed, absent from Loewen's release plan is any explanation of how he would receive medical care or ensure that his conditions are managed upon release. (*See* ECF No. 40-3.; s*ee also* ECF No. 50-1, at 2 (explaining that Loewen chose to live near "[t]hree [m]ajor [h]ospitals" following his diagnosis in 2017 but offering no explanation for why he did not seek medical treatment prior to his incarceration).) Thus, although "Loewen may be displeased with the current state of his health, he has not established [that the] BOP cannot adequately manage his medical needs."[7] (ECF No. 47, at 11.)

Turning to Loewen's argument that his medical conditions render him more suspectable to serious or fatal illness from the COVID-19 virus, the Court agrees with the government that Loewen's medical records do not reflect that he suffers from either hypertension or diabetes.[8] (*See* ECF No. 47, at 10 n.2.) Loewen attempts to circumvent this reality by hypothesizing about the potentially increased susceptibility he will face should his conditions worsen. Such speculation is neither extraordinary nor compelling. Furthermore, ulcerative colitis is not listed

---

[7] Loewen asserts in both his reply and supplement that the BOP has continued to ignore his ulcerative colitis. (*See, e.g.*, ECF No. 51, at 2–5.) In support, he provides the Court with a self-assessment of both the seriousness of his condition and his pain level. (*Id.*) Although the Court stops short of finding Loewen's contentions incredible, it notes that his assertions do not appear to match his medical records which reflect repeated contact with medical personnel, various diagnostic tests and screenings, the issuance of multiple stool cards, and referrals to specialists. The Court acknowledges the heavy burden faced by a defendant to demonstrate that his circumstances support a reduction in his sentence and finds that Loewen's unsupported claims do not meet that burden. *Cf. United States v. Beck*, 425 F. Supp. 3d 573, 575–76 (M.D.N.C. 2019) (considering the declaration of "an experienced oncologist" who reviewed an inmate's medical records when granting compassionate release based on BOP's gross mismanagement of the inmate's breast cancer treatment).

[8] Rather, the records reflect that Loewen had an "[e]levated blood-pressure reading, [without] diagnosis of htn [hypertension]," and that he was "counseled on diet" for "prediabetes" on September 10, 2021. (ECF 43-1, at 3, 46.)

by the CDC as a condition which renders a person more susceptible to serious illness from COVID-19 infection.[9] *See People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html. Indeed, ulcerative colitis does not inherently cause immunosuppression.[10] Data suggests that some immune-suppressant drugs prescribed to treat inflammatory bowel diseases may increase a person's risk of severe illness or death if exposed to COVID-19, *id.*, but Loewen does not argue that his medical regime renders him particularly susceptible to serious complications from COVID-19 infection. Loewen provides the Court with general information and conclusions and fails to explain why *his* conditions render *him* more susceptible to COVID-19 than other prisoners. Finally, while Loewen asserts that his vaccine immunity "could decrease over time," (ECF No. 40, at 7), the Court finds that—even combined with Loewen's existing health concerns—this hypothetical risk falls short of the exacting burden required for compassionate release. Because the Court finds that Loewen does not establish that he is particularly susceptible to serious illness or death from COVID-19, the Court need not access whether he faces a particularized risk of contracting the virus at FPC Montgomery.[11]

In summary, the Court finds that Loewen's health concerns do not present an

---

[9] "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the [Center for Disease Control and Prevention ("CDC")]." *United States v. Thompson*, No. 3:19cr76, 2021 WL 2673049, at *2 (E.D. Va. June 29, 2021).

[10] Loewen appears to conflate having an illness caused by an *overactive* immune system with being immunocompromised. David T. Rubin, *Coronavirus (COVID-19) Information for Patients With Inflammatory Bowel Disease*, Univ. Chi. Med. (April 17, 2020), https://www.uchicagomedicine.org/forefront/coronavirus-disease-covid-19/coronavirus-covid19-information-for-patients-with-inflammatory-bowel-disease. See also supra n.6.

[11] The Court notes, however, the FPC Montgomery reports just one active inmate case of COVID-19 infection as of September 26, 2022. *See COVID-19*, BOP, https://www.bop.gov/coronavirus/ (last visited Sept. 26, 2022).

8

extraordinary and compelling reason for modification of his sentence. To the contrary, the Court knew when it originally sentenced Loewen that (1) he suffered from a chronic medical issue and (2) the ongoing pandemic could or would affect the conditions of his confinement.

### 2. *Section 3553(a) Factors*

Even if a court finds that extraordinary and compelling reasons exist for relief, a court may not reduce a defendant's sentence unless, after considering the § 3553(a) factors to the extent they are applicable, it determines that the defendant's resentencing or release is merited by all the available facts. 18 U.S.C. § 3582(c)(1)(A). Section 3553(a) requires that a district court impose a sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing.[12] 18 U.S.C. 3553(a). The Court finds that reducing Loewen's sentence at this time would not serve these goals.

Loewen positions himself as a law-abiding citizen who committed an out-of-character crime, took responsibility for his actions, and then showed genuine remorse. (ECF No. 40, at 17.) He recounts his history of steady employment and points to his "long time significant other" and close family ties. (*Id.* at 17–18.) The United States Probation Office reports that Loewen has not received any disciplinary infractions during his incarceration. (ECF No. 46.) Further, Loewen has completed several classes including "commercial driver's license" and

---

[12] The sentence must reflect, among other things, (1) the seriousness of the offense, the need to promote respect for the law, and the need to provide just punishment for the offense; (2) the need to afford adequate deterrence; and (3) the need to protect the public from further crimes of the defendant. *See* 18 U.S.C. § 3553(a)(1)–(2). The Court must also consider who the defendant is as a person. To accomplish this, the Court considers both a defendant's history and his current characteristics, including his physical and mental health. Upon a motion for compassionate release, the Court must evaluate the defendant as he stands before the Court today. *See United States v. McDonald*, 986 F.3d 402, 411–12 (4th Cir. 2021). But when, as here, the defendant has served only a brief period of incarceration, the defendant bears the burden of demonstrating that the balance of the § 3553(a) factors have meaningfully changed in his favor.

"ACE Math and Natural Disaster." (*Id.*) Loewen provides no letters in support of his release from prison personnel or fellow inmates or other documentation demonstrating unusual efforts at rehabilitation.

The Court begins by noting that Loewen's original sentence reflected his generally clean record and the fact that he accepted responsibility by pleading guilty. In exchange, the government moved to dismiss two charges against him, and Loewen received a three-point reduction to his offense level. *See supra* Sec.I. Further, as it noted at his sentencing, the Court considered the statements of people close to Loewen who described him as helpful and kind. But Loewen's original sentence also bore out the Court's opinion that a substantial prison sentence was necessary to reflect the serious impact Loewen's schemes had on his victims and the fact that Loewen stole from those victims seemingly without conscience. Finally, the Court seriously contemplated the need to avoid unwanted sentencing disparities and noted that unlike McLarty, Loewen served as the front man of World Wide Carbon, LLC and shamelessly lied to investors.

The Court recognizes, however, that it must evaluate the § 3553(a) factors considering Loewen's post-sentencing conduct. *See McDonald*, 986 F.3d at 411–12. Loewen asserts that despite limited BOP programming due to the pandemic, he "has done every bit of rehabilitation that he can during" his time in prison.[13] (ECF No. 40, at 18.) Loewen's infraction-free record is

---

[13] Loewen also points to his proposed release plan in support of his release and contends that he "will have a strong network of family and friends who will assist him with any needs that may arise." (ECF No. 40, at 18; *see also* ECF No. 40-3.) Absent from this plan is any explanation of how he intends to pay his restitution or otherwise work to make his victims whole. (*Cf.* ECF No. 32, at 4 (noting that Loewen "promised to do his best to work hard to make the victims whole again").) Finally, in his reply, Loewen contends that his "'[First Step Act] Recidivism Risk Assessment' is reassuring" because it demonstrates that "Loewen has incredibly low odds of reoffending." (ECF No. 50, at 5.) The Court finds that this fact does not counsel in favor a sentence reduction, however, because as noted during Loewen's sentencing, the Court

10

commendable, but the Court finds that Loewen does not provide meaningful evidence of rehabilitation or otherwise identify any circumstances which change the Court's assessment of the need for Loewen's existing sentence. To the contrary, a shorter sentence in this case would not adequately deter others contemplating similar schemes, justly punish Loewen for his crimes, or reflect the serious harms caused to his victims.

## IV. CONCLUSION

The Court finds that Loewen has not demonstrated "extraordinary and compelling reasons" justifying his release under 18 U.S.C. § 3582(c)(1)(A). Further, the § 3553(a) factors do not support any modification to his sentence. Accordingly, the Court DENIES his motion. (ECF Nos. 39, 51.)

An appropriate Order shall issue.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record and to the United States Probation Office, Richmond Division.

Date: 7 November ~~October~~ 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

did not base Loewen's original prison sentence on the need to protect the public from his future crimes. Rather, to address any such concerns, the Court directed that Loewen may not work in the investment field or otherwise have contact with McLarty or the victims of his crimes following his release. (ECF No. 34, at 3.)

11